IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean Feldman,                              :
                    Petitioner             :
                                           :
          v.                               :
                                           :
Superior Products Support, LLC             :
(Workers' Compensation Appeal              :
Board),                                    :    No. 1389 C.D. 2021
                    Respondent             :    Submitted: July 29, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                FILED: February 16, 2023


          Sean Feldman (Claimant) petitions this Court for review of the
Workers' Compensation (WC) Appeal Board's (Board) November 19, 2021 order
affirming the WC Judge's (WCJ) decision that granted his Claim Petition for WC
benefits (Claim Petition) in part, and denied his Petition for Penalties (Penalty
Petition) against Superior Products Support, LLC (Employer).[1]  Claimant presents
one issue for this Court's review: whether the WCJ mischaracterized the nature of
Claimant's work injuries and rendered findings of fact and conclusions of law
inconsistent with the evidence.[2]  Upon review, this Court affirms.

---

[1] Employer manufactures and ships vinyl and aluminum powder-coated fencing and railing products.

[2] "Claimant is not appealing the issues related to the denial of the Penalty Petition." Claimant Br. at 6 n.1.

Claimant began working for Employer as a box machine operator on July 15, 2019. On August 19, 2019, while removing scrap plastic and cardboard from a large 1,200 pound wooden box called a Gaylord, the Gaylord tilted on the forklift, slid off, and struck Claimant in the right front shoulder region, knocking him backwards.[3] Claimant felt a jolt of pain, burning, and numbness in his right shoulder. No one witnessed the accident, but Claimant reported the injury to his supervisor and was transported to WellSpan Medical Center (WellSpan) for treatment. Although Claimant attempted to return to modified-duty work several weeks later, he did not feel capable of doing the job and stopped working.

On September 3, 2019, Employer filed a Medical-Only Notice of Temporary Compensation Payable for a shoulder contusion. On September 5, 2019, Employer issued an Amended Notice of Compensation Payable that added payment of temporary total compensation benefits of $524.50, based upon an average weekly wage of $607.50. On November 5, 2019, Employer issued a Notice Stopping the Temporary Notice of Compensation Payable and a Notice of WC Denial (NCD) denying the claim because Claimant did not sustain a work-related injury, and Claimant failed to attend an independent medical examination (IME) without adequate explanation.

On December 13, 2019, Claimant filed the Claim Petition seeking total disability benefits from August 20, 2019, and ongoing, for injuries to his "cervical spine, including but not limited to sprain/strain and C5-6 disruption/herniation; right shoulder injury including aggravation of pre[]existing conditions; right brachial plexus injury, complex regional pain syndrome [(CRPS),] and all other injuries/diagnosis established by the medical evidence." Reproduced Record (R.R.)

---

[3] Claimant did not fall to the floor.

at 3a. On December 27, 2019, Employer denied Claimant's Claim Petition allegations.

The WCJ conducted hearings on January 22, April 15, July 22, September 2, and October 28, 2020. On March 25, 2021, the WCJ partially granted the Claim Petition, declaring that Claimant "prov[ed] that he sustained a work-related injury on August 19, 2019[,] in the form of a right shoulder contusion that prevented him from working his pre-injury job and light[-]duty work, at times, from August 19, 2019 through March 2, 2020." Claimant Br. App. (WCJ Dec.) at 32. The WCJ denied the Claim Petition to the extent that "Claimant failed to prove that he sustained any [] condition or injury other than a right shoulder contusion as a result of the August 19, 2019 work injury." *Id.* Claimant appealed to the Board. On November 19, 2021, the Board affirmed the WCJ's decision. Claimant appealed to this Court.[4]

Claimant argues that the WCJ mischaracterized the nature of Claimant's work injuries and rendered findings of fact and conclusions of law inconsistent with the evidence. In particular, Claimant asserts that the WCJ erred by considering the 2019 work injury to be an aggravation of a brachial plexus injury and CRPS that Claimant never previously had, and the WCJ relied on inadmissible hearsay testimony by Christopher Davis, M.D. (Dr. Davis) that was neither admitted as evidence nor relied upon by Employer's medical expert, physical medicine and rehabilitation specialist Scott Naftulin, D.O. (Dr. Naftulin).[5]

"In a claim proceeding, the employee bears the burden of establishing a right to compensation and of proving all necessary elements to support an award."

---

[4] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co. LLC)*, 252 A.3d 1169, 1172 n.3 (Pa. Cmwlth.), *appeal denied*, 261 A.3d 378 (Pa. 2021).

[5] Dr. Naftulin subspecializes in pain medicine.

3

*Henderson v. WP Ventures, Inc. (Workers' Comp. Appeal Bd.)*, 269 A.3d 1272, 1275 (Pa. Cmwlth. 2022) (quoting *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993)). In particular, "the claimant bears the initial burden of proving that his injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). "Generally, a claimant satisfies h[is] burden by presenting unequivocal medical evidence that establishes a causal connection between the alleged injury and the work incident." *Roundtree v. Workers' Comp. Appeal Bd. (City of Phila.)*, 116 A.3d 140, 144 (Pa. Cmwlth. 2015).

At the WCJ hearings, Claimant described that, after his August 19, 2019 work accident, WellSpan x-rayed his shoulder, instructed him to take Ibuprofen, placed his right arm in a sling, and indicated that he could return to work, but should not use his right arm. *See* R.R. at 39a, 499a. Claimant recalled that, the next day, he experienced shooting pain from his shoulder through his right armpit and into his elbow. *See* R.R. at 39a-40a. Claimant stated that tingling pain, burning sensation, hypersensitivity, and numbness then extended into his right wrist, through the bottom of his right hand, and into his right first and pinky fingers, so he treated with Carl Becker, M.D. (Dr. Becker) on August 22, 2019. *See* R.R. at 40a-41a. Claimant recollected that Dr. Becker ordered a magnetic resonance imaging (MRI) of his neck (which he understood revealed a herniated disc), prescribed Celebrex, and gave him a note to remain off from work. *See* R.R. at 41a-42a, 49a. An August 23, 2019 MRI reflected some narrowing at Claimant's C5-6, disc protrusion at that C5-6 level, and a mild disc bulge with some degeneration at the C3-4 level. *See* R.R. at 295a, 303a.

Claimant recalled that he treated with Dr. Becker again on August 28, 2019, at which time his pain had gotten more severe, and his right hand had swollen and had a purple blemish. *See* R.R. at 43a-44a. At the January 22, 2020 WCJ

4

hearing, Claimant testified that he was not working, his right hand swelling had gotten worse over time, he had discomfort if he straightened his fingers, and he guarded his hand and arm from cold/heat and being bumped because hypersensitivity made it extremely painful.[6]  *See* R.R. at 44a-45a, 48a.

On August 28, 2019, Dr. Becker released Claimant to return to modified-duty work, without using his right arm.  *See* R.R. at 50a.  Although Employer assigned Claimant to work left-handed at the box machine, and also as a small parts bagger, Claimant declared those are two-hand jobs[7] and pain prevented him from doing them fully, the noise combined with his pain and inability to concentrate was too much of a distraction, and he was "bumped into a lot."  R.R. at 240a; *see also* R.R. at 50a-51a, 78a-81a, 233a-239a, 241a.  Thereafter, Dr. Becker prescribed medications and physical therapy, which Claimant undertook for approximately four weeks without benefit.  *See* R.R. at 51a, 84a, 303a.

On September 17, 2019, Claimant treated at the emergency room for extreme pain that prevented him from sleeping.  *See* R.R. at 52a.  On September 25, 2019, Dr. Becker gave Claimant a note excusing him from work, and ordered an MRI and electromyography (EMG) of Claimant's right shoulder, after which Dr. Becker considered that Claimant had a brachial plexus injury or reflex sympathetic dystrophy (RSD), and recommended that he follow up with a pain management specialist.  *See* R.R. at 52a-54a, 81a.  Claimant last treated with Dr. Becker on October 3, 2019.  *See* R.R. at 82a.  On October 4, 2019, because his pain and hypersensitivity continued to be severe in his right shoulder, arm, and hand (to the

---

[6] Claimant admitted that, although his right hand was on the Gaylord when it struck his shoulder and chest, the Gaylord did not hit his hand.  *See* R.R. at 78a.

[7] Notwithstanding, Claimant's co-worker, Mr. Lance (whose full name does not appear in the record), is hemiplegic (i.e., he only has use of one side of his upper body).  *See* R.R. at 509a. Claimant admitted that Mr. Lance was able to operate the box machine and glue machine, and do small parts/screw bagging with one arm.  *See* R.R. at 175a-177a, 237a, 254a, 463a-477a.

5

point that he could not drive), Claimant sought a second opinion from Christian Fras, M.D. (Dr. Fras), who prescribed medication, a heating/cooling pad, and pain management. *See* R.R. at 54a-56a, 82a-83a.

On November 14, 2019, Claimant treated with pain management physician Gerald Dworkin, M.D. (Dr. Dworkin), who prescribed treatment for RSD and sympathetic nerve blocks,[8] plus medications which only "very slightly" took the edge off his pain. R.R. at 57a; *see also* R.R. at 56a, 252a-253a. Claimant further asserted that the nerve block injection did not afford him any relief. *See* R.R. at 89a. Because he lost his insurance in the interim, Claimant did not treat again for injuries related to the August 19, 2019 work accident until he saw board-certified interventional pain neurologist Todd A. Bromberg, M.D. (Dr. Bromberg) on March 10, 2020. *See* R.R. at 252a-253a.

At the January 22, 2020 WCJ hearing, Claimant testified that, as of that time, he "pretty regularly," R.R. at 59a, experienced "shooting pain, a jolting pain that runs down through the neck into the chest, shoulder, and then down through the arm and the elbow and the fingers[,]" R.R. at 58a, and constant hypersensitivity in his shoulder, arm, and hand.[9] *See* R.R. at 59a. Claimant asserted that he had limited mobility in his right arm and shoulder regions, and he could not sleep on his right side. *See* R.R. at 59a, 62a-63a. Claimant avowed that he never experienced those types of symptoms in the past. *See* R.R. at 59a. He stated that Dr. Dworkin did not release him to return to work, and Claimant felt that he was "absolutely not" able to return to any type of work. R.R. at 59a. Claimant has not been released to return to work since September 25, 2019. *See* R.R. at 81a, 241a-242a. Claimant asserted that no doctors have recommended that he undergo surgery. *See* R.R. at 83a.

---

[8] Claimant testified that he only had one Stellate ganglion block injection on November 22, 2019, because he could not afford his insurance co-payment. *See* R.R. at 57a-58a, 89a.

[9] Claimant is right-handed. See R.R. at 35a, 286a, 523a.

6

When Claimant testified at the October 28, 2020 WCJ hearing, he confirmed that he was experiencing increased, constant, daily shooting, burning, and stabbing pain (level 9 or 10 on a scale of 0 to 10), plus numbness and tingling in his right arm, shoulder and hand regions, and shooting pain and burning in his right neck and chest regions. *See* R.R. at 215a-216a, 224a. He added that his right hand swelling and hand, arm, shoulder, and chest sensitivity continued, his reaction to temperature changes with right hand sweating worsened, and there were times when his right arm was warmer than his left arm. *See* R.R. at 216a-217a, 220a. Claimant declared that he had no ability to use his right arm, which hampers his ability to care for his children and accomplish his activities of daily living.[10] *See* R.R. at 218a. He claimed that his right ring and pinky fingers naturally tend to curl due to the injury and pain. *See* R.R. at 223a-224a.

Claimant recalled that his counsel referred him to Dr. Bromberg, who he first visited on March 10, 2020, and with whom Claimant treated on a monthly basis (by Tele-Med during the COVID-19 pandemic). *See* R.R. at 227a-228a, 318a, 321a. Claimant stated that Dr. Bromberg prescribed medications and a ketamine infusion which he underwent on August 25, 2020, that afforded him "a small decrease in pain" in his shoulder, neck and chest regions. R.R. at 231a; *see also* R.R. at 228a-230a. Claimant described that his pain symptoms have also resulted in memory loss, his inability to concentrate, and extreme anxiety. *See* R.R. at 232a. Claimant testified that Dr. Bromberg has not released him to return to work and, at his last appointment (the day before the hearing), Dr. Bromberg recommended that Claimant try physical therapy. *See* R.R. at 241a-242a.

Claimant admitted that he sustained a right shoulder injury during his prior employment with Schultz Transportation in June 2017, for which he treated

---

[10] Claimant has four children, ages 10 to 15. *See* R.R. at 18a-19a.

7

with Dr. Becker, and underwent rotator cuff repair, bicep tendon repair, and an ulnar nerve relocation. *See* R.R. at 33a, 84a-85a. Claimant declared that, when he began working for Employer in July 2019, he was no longer under a doctor's care for those prior conditions, he did not have any restrictions, and he was pain free and physically capable of doing the job. *See* R.R. at 33a-34a, 86a-88a. Claimant expressed that his current symptoms are "a lot more extreme" than his 2017 symptoms. *See* R.R. at 224a.

On cross-examination, Claimant recollected being out of work for three to four months after his 2017 work accident; that his injury involved his right upper extremity and right shoulder for which he underwent MRIs and EMGs; and that he treated with Dr. Davis until the WCJ approved a $50,000.00 settlement of that claim in December 2017. *See* R.R. at 248a-251a. He admitted that, as of the last appointment with Dr. Davis in December 2017, Dr. Davis had prescribed pain medication for the 2017 work injury. *See* R.R. at 249a-250a.

Claimant further acknowledged:

[Employer's Counsel] And according to the medical records we have related to your prior 2017 injury, you reported numbness and tingling in your right arm, and specifically in your fourth and fifth fingers. Is that correct?

[Claimant] Yes.

[Employer's Counsel] You reported hypersensitivity. Is that correct?

[Claimant] Yes.

[Employer's Counsel] You reported swelling in your right hand. Is that correct?

[Claimant] Yes.

R.R. at 251a-252a.

8

Claimant also presented Dr. Bromberg's July 7, 2020 deposition testimony. Dr. Bromberg first treated Claimant on March 10, 2020, at which time Claimant described his work accident and reported that he "experienced immediate pain in [his] neck, as well as [his] right shoulder." R.R. at 281a; *see also* R.R. at 180a, 227a. Claimant informed Dr. Bromberg of his prior right rotator cuff reconstructive surgery, and bicep tendon and right ulnar nerve repairs. *See* R.R. at 281a.

Dr. Bromberg recalled that Claimant complained of constant right-side neck pain that radiated down to his right fingers, numbness in his right ring and pinky fingers, and right hand swelling with hypersensitivity to temperature and light touch, weakness, and abnormal hair growth and nail bed changes. *See* R.R. at 280a-281a, 286a. Dr. Bromberg reported that Claimant expressed that his pain caused him difficulty sleeping, limited his activity level (particularly playing with his children), and negatively impacted his quality of life. *See* R.R. at 286a.

Based on his physical examination of Claimant, Dr. Bromberg observed that Claimant guarded his arm against his body to prevent anything from touching it, and Claimant was clearly uncomfortable. *See* R.R. at 289a. Dr. Bromberg found that Claimant had decreased right arm range of motion, difficulty lifting his arm above his head, right hand rigidity, right hand redness, and swelling in his right fingers. *See* R.R. at 289a, 291a-292a, 294a. Dr. Bromberg noted that Claimant had a positive Tinel's test of his right elbow,[11] a positive brachial plexus[12] tension test, and diminished deep tendon reflexes, and that even gentle movement

[11] "The Tinel's is a test where [physicians] tap a peripheral nerve to see if it elicits pain." R.R. at 291a.

[12] Dr. Bromberg explained that the brachial plexus is a weblike bundle of nerves that exit the spine at the front of the neck and shoulder that ultimately extend into the arm, hand, chest, and head. *See* R.R. at 289a. He described that every upper extremity function goes through the brachial plexus. *See* R.R. at 289a-290a.

reproduced and aggravated his ongoing pain. *See* R.R. at 289a-291a, 293a. Dr. Bromberg discovered that Claimant's right arm was weaker than his left arm, and he experienced positive hypersensitivity to light touch. *See* R.R. at 293a.

Dr. Bromberg stated that Claimant's neurological problems were consistent with the C5-6 disc protrusion evident on his August 23, 2019 MRI, and with CRPS. *See* R.R. at 295a-296a. He also testified that Claimant has the type of CRPS that results from nerve trauma where the nerves are still intact, but they do not fire correctly. *See* R.R. at 298a. Dr. Bromberg declared that, although there are no definitive diagnostic studies for CRPS, based on his knowledge of CRPS's clinical signs, his examination of Claimant, and his review of Claimant's medical records from WellSpan, Dr. Becker, Dr. Fras, Dr. Dworkin, and diagnostic studies, Claimant's condition met all of the CRPS criteria. *See* R.R. at 299a-302a, 321a-322a.

Dr. Bromberg concluded, within a reasonable degree of medical certainty, that Claimant sustained a traumatic brachial plexus injury on August 19, 2019, that caused Claimant's CRPS, cervical strain, and right upper extremity spasms. *See* R.R. at 329a, 331a-332a, 351a. He declared that there was no way Claimant could have returned to work during the time he treated Claimant. *See* R.R. at 333a-335a. He described Claimant's condition as guarded, particularly since the COVID-19 pandemic prevented treatment other than by medication. *See* R.R. at 325a, 327a, 334a, 336a. Dr. Bromberg testified that Claimant's reported symptoms have been consistent, and he has not felt, whether the examination was in person or by Tele-Med, that Claimant was ever untruthful, or magnifying his symptoms. *See* R.R. at 365a.

On cross-examination, Dr. Bromberg confirmed that he only reviewed Claimant's post-August 2019 injury medical records from WellSpan, Dr. Becker, Dr. Fras, and Dr. Dworkin, plus the EMG, cervical MRI images and reports, and the

10

right shoulder MRI report. *See* R.R. at 340a. He admitted that his conclusion that Claimant had fully recovered from the 2017 work injury was based solely on Claimant's representation, and he did not review records that released Claimant to return to full-duty work after the 2017 injury. *See* R.R. at 340a-341a. Dr. Bromberg confirmed that Tele-Med visits are very limited, and do not allow for physical examination, so he assessed Claimant based on Claimant's responses to his questions and directed movements. *See* R.R. at 343a-345a. Although Dr. Bromberg could not test Claimant's temperature change reports, he claimed he visually observed swelling. *See* R.R. at 348a.

Dr. Bromberg described that Claimant was reluctant to use his right hand or arm during physical examinations and, although some patients can develop atrophy due to lack of use, neither he nor any other doctor documented that Claimant exhibited atrophy. *See* R.R. at 348a-349a. He also agreed that Claimant did not have nail bed changes or abnormal hair growth that are typical CRPS symptoms. *See* R.R. at 349a-350a. Dr. Bromberg further conceded that his examinations were largely based on Claimant's verbal history and subjective complaints which, if not accurate or truthful, would impact Dr. Bromberg's opinions. *See* R.R. at 347a, 350a.

Employer offered Dr. Naftulin's September 3, 2020 deposition testimony. Dr. Naftulin recalled that, at the March 2, 2020 IME, Claimant described the 2019 work accident[13] and his subsequent medical treatment at WellSpan, and by Dr. Becker and Dr. Dworkin, plus three weeks of physical therapy that Claimant reported were not particularly beneficial. *See* R.R. at 490a-492a, 495a-496a. He also reviewed Claimant's testimony, medical records, Dr. Bromberg's testimony, objective test reports, and the video recordings of the machines on which Claimant worked for Employer. *See* R.R. at 497a-500a, 508a. Claimant also summarized his

---

[13] Claimant told Dr. Naftulin that he had worked for Employer for approximately six months before his August 2019 injury. *See* R.R. at 424a, 496a.

2017 work accident,[14] his resulting right shoulder/bicep injury, and his subsequent medical treatment therefor.

Relative to the 2019 work injury, Dr. Naftulin recalled that Claimant's August 19, 2019 WellSpan records reflected Claimant's complaints of right shoulder numbness and tearing pain, but a right clavicular/shoulder x-ray revealed no fracture, dislocation, or acromioclavicular joint separation, and his neurologic evaluation was unremarkable. *See* R.R. at 497a, 499a, 539a-540a. Dr. Naftulin also observed that Claimant had been guarding his shoulder, and visibly flinched when his clavicle area was touched, but he appeared unphased when his shoulder was palpated, and there was no swelling, bruising, or rash evident. *See* R.R. at 540a, 558a-559a.

Dr. Naftulin recalled that Claimant followed up with Dr. Becker on several occasions, during which Claimant's neck range of motion was normal, but he exhibited decreased range of motion, tenderness, and pain in his right shoulder, so Dr. Becker ordered physical therapy, an EMG, and an MRI. *See* R.R. at 498a, 543a-544a. Claimant reported to Dr. Becker that physical therapy aggravated his neck, the EMG was normal, and the MRI - compared to an October 2017 study - basically demonstrated degenerative changes involving his cervical spine, and Dr. Dworkin's single ganglion block did not afford him relief. *See* R.R. at 89a, 284a, 498a, 544a-546a.

Dr. Naftulin recollected that Claimant's complaints at the IME included constant burning and shooting pain that started in the lateral aspect of his neck just above his right clavicle and radiated across the front of his chest, down his right shoulder and arm, and into his right hand, particularly his 4th and 5th fingers, that was aggravated by heat or cold exposure, inclement weather such as rain, and bumping the area. *See* R.R. at 493a-494a, 529a-530a. Claimant told Dr. Naftulin

---

[14] Claimant informed Dr. Naftulin that his prior work injury occurred in 2014-2015. *See* R.R. at 492a.

that his medications do not relieve his constant pain, so he grits his teeth, changes positions or moves about, and deals with it. *See* R.R. at 493a-495a, 530a.

During the IME, Dr. Naftulin observed that Claimant was wearing a short-sleeve t-shirt over a long-sleeve t-shirt and declined to take them off due to pain, which limited Dr. Naftulin's ability to observe and make bilateral comparisons of Claimant's right arm above his hand. *See* R.R. at 500a. Although Claimant allowed Dr. Naftulin to examine his hand and even to extend his fingers, Claimant refused all of Dr. Naftulin's right upper extremity testing. *See* R.R. at 544a, 548a. Based on the testing Dr. Naftulin could conduct from Claimant's mid-forearm to his hand, Claimant complained of tenderness to superficial stroking on his right side, but not in his upper right extremity, and Dr. Naftulin did not detect any spasm, twitching, color changes, temperature changes, hair or nail abnormalities, or atrophy, the latter of which he would expect to see in someone who did not use his right arm. *See* R.R. at 501a-502a, 555a-556a. Dr. Naftulin recalled that "[s]trength testing in [Claimant's] right upper extremity was limited as he did not participate." R.R. at 502a.

> Dr. Naftulin further found:
>
> [Claimant] had decreased sensation to light touch throughout the right ring and little fingers and throughout the medial forearm which exceeded an ulnar nerve distribution. The Spurling maneuver for cervical radiculopathy was negative. The Hoffman reflex for upper motor neuron involvement, meaning spinal cord or brain was negative. The remainder of the examination was limited by [Claimant's] lack of participation.

R.R. at 502a; *see also* R.R. at 554a (There was "definitely a lack of participation."). Accordingly, Dr. Naftulin declared that all of his findings during Claimant's physical examination were subjective. *See* R.R. at 555a.

13

Although he acknowledged that burning pain, swelling, temperature changes, and excess sweating are symptoms of CRPS, Dr. Naftulin testified that he did not make any objective findings consistent with Claimant having CRPS. *See* R.R. at 507a, 549a-550a. He testified that he did not observe and would not expect hand swelling from the mechanism of Claimant's described August 2019 injury. *See* R.R. at 519a. Dr. Naftulin did not observe any redness in Claimant's right hand. *See* R.R. at 518a.

Dr. Naftulin explained that, because IMEs have significant subjective components, he simultaneously conducts illness behavior profiles to determine the validity of the effort being put forth by the examinee and degree of symptom exaggeration. *See* R.R. at 503a. Dr. Naftulin described that Claimant refused to complete the questionnaire portion of the IME, which is one of the measures Dr. Naftulin uses to determine symptom exaggeration, and his validity testing was consistent with Claimant putting forth a submaximal effort which correlated separately with Dr. Naftulin's clinical observations.[15] *See* R.R. at 503a, 525a-526a, 528a. Ultimately, based on Claimant's illness behavior profile, Dr. Naftulin concluded Claimant was magnifying his symptoms during the IME. *See* R.R. at 510a-511a.

Dr. Naftulin disagreed with Dr. Bromberg's brachial plexus injury diagnosis, which usually appears following severe trauma, such as fracture or dislocation of the clavicle or shoulder, which did not occur here, and there was no documentation of even swelling or bruising immediately after the injury. *See* R.R. at 506a. He also disagreed with Dr. Bromberg's CRPS diagnosis because Claimant did not meet the standard diagnostic criteria for CRPS. *See* R.R. at 507a. Dr.

---

[15] Claimant asserted that, during his March 2, 2020 IME with Dr. Naftulin, he was unable to complete the IME intake forms and some of the motions because his pain was too intense. *See* R.R. at 233a.

14

Naftulin stated that, although CRPS symptoms may wax and wane, the signs will not. *See* R.R. at 560a.

Dr. Naftulin concluded, within a reasonable degree of medical certainty based on the March 2, 2020 IME, that Claimant sustained a right shoulder contusion at work on August 19, 2019, from which he had fully recovered, no further treatment or medications, or activity restrictions were necessary for that injury, and he could return to his pre-injury job.[16]    *See* R.R. at 504a, 508a, 510a.    Dr. Naftulin summarized:

> The mechanism of injury described would be a plausible cause of a right shoulder contusion again assuming accuracy of history provided.    The examination was incredulous, there was certainly no objective evidence of ongoing impairment relative to the injury.    One would expect a contusion to spontaneously resolve simply with the passage of time, soft tissue injury similar to a quote bruise end quote [sic].    There was no evidence of a more substantial injury.    He presented with numerous nonphysiologic, nonanatomic findings which I have summarized in my report and discussed with you today. His clinical complaints were inconsistent with cervical radiculopathy.    The clinical presentation was inconsistent with a brachial plexopathy, the mechanism of injury would not support a brachial plexopathy injury.    And documented symptoms subsequent to the work injury did not support a brachial plexopathy injury.    The medical records did support he did have some preexisting pain conditions especially the fact that he had an MRI of the cervical spine done in 2017, and the EMG or electrodiagnostic test[] was normal ruling out other more substantial injuries including brachial plexopathy and cervical radiculopathy.    Based upon all of these factors, I felt that he had fully recovered from the [August 2019] work injury.

R.R. at 505a-506a.

---

[16] Dr. Naftulin acknowledged that, even if Claimant had CRPS and even on his current medications, he would be able to perform the modified jobs depicted in the video. *See* R.R. at 508a-510a.

15

Immediately prior to Dr. Naftulin's deposition, Employer presented Claimant's pre-2019 work injury reports from David Baker, M.D. (Dr. Baker) (October 1, 2007 IME report related to Claimant's lower back), Dr. Davis (treatment records for March 3, April 24, June 5, July 17, July 23, August 21, September 11, September 29, October 30, November 27, and December 18, 2017), Dr. Doshi[17] (April 23, 2017 EMG report), and Raymond Dahl, M.D. (Dr. Dahl) (May 2, 2017 IME report) (collectively, Prior Medical Records) for Dr. Naftulin's review.[18] *See* R.R. at 511a-512a, 519a-522a, 524a. However, Dr. Naftulin confirmed that he did not rely upon the Prior Medical Records to conduct Claimant's March 2, 2020 IME, or in preparation of his March 2, 2020 IME report. *See* R.R. at 519a-520a, 522a, 524a; *see also* Certified Record Item 38 (Dr. Naftulin's September 3, 2020 Notes of Testimony) at Ex. 2 (March 2, 2020 IME report).

The law is well established:

> The WCJ is the fact[-]finder, and it is solely for the WCJ . . . to assess credibility and to resolve conflicts in the evidence. Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations. In addition, it is solely for the WCJ, as the fact[-]finder, to determine what weight to give to any evidence. . . . As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted.

*W. Penn Allegheny Health Sys. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (quoting *Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs.)*, 159 A.3d 61, 69 (Pa. Cmwlth. 2017) (internal citations, quotations, and brackets omitted)). An appellate court may only disturb a WCJ's credibility determinations if "their basis is arbitrary and capricious, or so fundamentally dependent on a misapprehension of materials [sic] facts, or so

---

[17] Dr. Doshi's full name does not appear in the record before this Court.
[18] Dr. Naftulin confirmed that he reviewed the Prior Medical Records just before his deposition. *See* R.R. at 520a-522a, 524a.

16

otherwise flawed, as to render the basis irrational." *Hughes v. Wawa, Inc. (Workers' Comp. Appeal Bd.)*, 271 A.3d 922, 934 (Pa. Cmwlth. 2021).

Here, the WCJ made the following findings from which Claimant appeals, *see* R.R. at 14a-15a:

33. This [WCJ] does not find Claimant's testimony regarding his ongoing subjective complaints of pain or inability to work as they relate to the August 19, 2019 work injury to be credible beyond the March 2, 2020 examination by Dr. Naftulin. This [WCJ] notes that Claimant denied having similar complaints of right arm hypersensitivity prior to the August 19, 2019 work injury. This testimony is not consistent with the history found in the records of Dr. Davis and Dr. Doshi who both documented Claimant's complaints of right arm hypersensitivity along with right hand swelling. Thus, it would appear that Claimant's right arm hypersensitivity and right hand swelling pre-existed the August 19, 2019 work injury.

34. As the causal connection between Claimant's alleged ongoing symptoms and the August 19, 2019 work injury is not obvious, this issue must be resolved by the credible opinion of a qualified medical expert. With regard to the medical doctors who have testified in this matter, the opinions of Dr. Naftulin are accepted over the opinions of Dr. Bromberg where there is a difference between the two for the following reasons:

a. Dr. Naftulin's opinion that Claimant's work injury was limited to a right shoulder contusion appears to be consistent with the mechanism of injury. Although Claimant was struck by a heavy Gaylord, the force of this strike was not strong enough to knock Claimant to the ground. Likewise, according to the medical records of WellSpan from the date of the work injury, which were reviewed by Dr. Naftulin, there was no significant bruising, cuts or abrasions noted during the examination of Claimant at this visit.

b. Dr. Bromberg's opinion that Claimant sustained a brachial plexus traumatic injury as a result of the

17

August 19, 2019 work injury is not credible **because he failed to adequately account for Claimant's prior diagnosis of brachial plexopathy from the 2017 work injury**. **Claimant had been treating with a Dr. [] Davis for his 2017 work injury**. **Dr. Davis had diagnosed Claimant with having had sustained a brachial plexus injury**. This [WCJ] notes that Dr. Davis prescribed opioid medications for treatment of the 2017 work injury just prior to Claimant's settlement of this work injury in December of 2017. Thus, it appears that Claimant was still in active treatment of the 2017 work injury when he settled his medical benefits for this work injury. **Dr. Bromberg failed to offer a credible explanation regarding when Claimant's brachial plexus symptoms related to the 2017 work injury ended**, **and/or how they were materially aggravated by the 2019 work injury**.

c. Dr. Bromberg's testimony that Claimant sustained CRPS as a result of the August 19, 2019 work injury is not credible. Dr. Bromberg himself noted that a sympathetic nerve block is in part diagnostic, meaning if a person has a positive response from the injection, it is an indicator that the person has CRPS. Here, Claimant did not have a positive response from the sympathetic nerve block, casting doubt on the opinion of Dr. Bromberg that the sympathetic nerve or process was injured or affected as a result of the work injury of August 19, 2019. This [WCJ] also notes that Claimant had very limited response to the ketamine infusion that was administered, which once again calls into question whether Dr. Bromberg is on the right track with regard to diagnosing the source of Claimant's pronounced and extended symptoms as they relate to the August 19, 2019 work injury. More importantly, this [WCJ] notes that Claimant's subjective complaints[,] which were relied upon by Dr. Bromberg to reach his diagnosis of CRPS, were strikingly similar to Claimant's past subjective complaints to Dr. Davis and Dr. Doshi, whom

18

Claimant treated with in 2017, in which it was documented that Claimant reported having hypersensitivity throughout his right upper extremity with pain into the fingertips, to the 4th and 5th digits, and right hand swelling. Dr. Bromberg failed to credibly explain how Claimant's current subjective complaints and symptoms are not a mere continuation of his 2017 symptoms.

d. Dr. Bromberg admitted that his opinions are based upon the truthfulness and veracity of Claimant's subjective complaints. As noted early, the accuracy of Claimant's prior complaints have been called into question when he incorrectly testified that he did not have similar symptoms of right arm hypersensitivity prior to the 2019 work injury. In addition, this [WCJ] notes that Claimant not only displayed symptoms magnification to Dr. Naftulin, **he displayed symptom magnification to both Dr. Dahl and Dr. Baker during prior defense medical examinations for different work injuries**. This [WCJ] notes that if Claimant was truly unable to move his arm and hand as he testified to and as he demonstrated by failing to conduct the motions requested by Dr. Naftulin during his physical examination [of] Claimant, then one would think there would be signs of atrophy from disuse. Both Dr. Naftulin and Dr. Bromberg agreed that one would expect some signs of atrophy from alleged disuse over a period of months, but no signs of atrophy of Claimant's right arm were ever noted by either doctor. This [WCJ] also finds i[t] significant that when Claimant reported level 9 out of 10 level pain to Dr. Bromberg, Dr. Bromberg recorded that Claimant's blood pressure and pulse were normal. Dr. Bromberg noted that pulse and blood pressure can increase due to extreme pain. The lack of any increase in Claimant's pulse or blood pressure leads this [WCJ] to believe that Claimant really was not experiencing level 9 out of 10 level pain and that he was exaggerating his pain symptoms, which is consistent with the observations of Dr[.] Naftulin.

19

. . . .

36. Based on the credible opinions of Dr. Naftulin this [WCJ] finds as fact that Claimant's August 19, 2019 work injury was limited to a right shoulder contusion.

37. Based on the credible opinions, in part, of Dr. Bromberg[,] this [WCJ] finds as fact that Claimant was unable to perform the duties of his pre[-]injury job or the offered light[-]duty work as a result of his August 19, 2019 work injury.

38. Based on the credible opinions of Dr. Naftulin, this [WCJ] finds as fact that Claimant fully recovered from his right shoulder contusion injury of August 19, 2019[,] as of the March 2, 2020 evaluation of Claimant by Dr. Naftulin.

WCJ Dec. at 29-31 (emphasis added).

The WCJ concluded:

2. With regard to the Claim Petition, Claimant met his burden in part of proving that he sustained a work-related injury on August 19, 2019[,] in the form of a right shoulder contusion that prevented him from working his pre-injury job and light[-]duty work, at times, from August 19, 2019 through March 2, 2020. Claimant failed to prove that he sustained any other condition or injury other than a right shoulder contusion as a result of the August 19, 2019 work injury. Claimant failed to prove that he sustained CRPS or a brachial plexus injury or a cervical injury as a result of the August 19, 2019 work injury.

3. Employer proved that Claimant fully recovered from his right shoulder contusion injury as of the March 2, 2020 [IME] by Dr. Naftulin.

WCJ Dec. at 32. After review, the Board affirmed the WCJ's decision. However, the Board did not address Claimant's contention that the WCJ relied on inadmissible medical hearsay that was neither admitted as evidence, nor relied upon by Employer's medical expert.

Although the WCJ issued a detailed decision summarizing the evidence presented, he clearly based his decision, at least in part, on Dr. Naftulin's testimony

20

regarding Claimant's Prior Medical Records. *See* WCJ Dec. at 30-31. Employer's counsel objected to the Prior Medical Records as being irrelevant and outside the four corners of Dr. Naftulin's IME Report because Dr. Naftulin did not issue an IME report addendum addressing them. *See* R.R. at 512a-513a, 519a. Claimant's counsel also added a hearsay objection regarding Dr. Dahl's May 2, 2017 IME report.[19] *See* R.R. at 514a. Employer ultimately did not offer, and the WCJ did not admit, Claimant's Prior Medical Records into evidence.

The General Assembly has declared in Section 422(a) of the WC Act[20] that "sufficient competent evidence" must support each of the WCJ's factual findings. 77 P.S. § 834. This Court has held that "[t]he WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 (Pa. Cmwlth. 2014). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Obimak Enter. v. Dep't of Health*, 200 A.3d 119, 126 (Pa. Cmwlth. 2018) (quoting *B.B. Kim's Mkt., Inc. v. Dep't of Health, Div. of Women, Infants & Child. (WIC)*, 762 A.2d 1134, 1135 (Pa. Cmwlth. 2000)). Generally, "hearsay medical reports do not constitute substantial evidence and cannot support an independent finding of a WCJ." *Ciarolla v. Workers' Comp. Appeal Bd. (Astrazeneca Pharms. LP)*, 239 A.3d 204, 208 (Pa. Cmwlth. 2020). However, Section 131.66 of the Board's Regulations ("Special Rules of Administrative Practice Before WCJs") specifies, in relevant part:

> (a) Oral depositions . . . will be admissible at the time of hearing or by mail if allowed by the [WCJ] in the same manner as if the deponent appeared before the [WCJ] and testified.

---

[19] "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Alessandro v. Workers' Comp. Appeal Bd. (Precision Metal Crafters, LLC)*, 972 A.2d 1245, 1250 (Pa. Cmwlth. 2009); *see also* Pennsylvania Rule of Evidence 801(c), Pa.R.E. 801(c).

[20] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

(b) Objections shall be made and the basis for the objections stated at the time of the taking of the depositions. Only objections which are identified in a separate writing, introduced prior to the close of the evidentiary record . . . , and stating the specific nature of the objections and the pages where they appear in the deposition or the exhibits to which they refer will be preserved for ruling. Objections not so preserved are waived.

34 Pa. Code § 131.66. Here, because Claimant did not identify any of his objections to Employer's introduction of the Prior Medical Records in a separate writing to the WCJ, they were waived; the WCJ did not rule on them, and the practical effect was that no objections were made.[21] *See* WCJ Dec. at 29.

When no objection is made, hearsay medical records "will be given [their] natural probative effect and [they] may support a finding of the [WCJ], [i]f [they are] corroborated by any competent evidence in the record . . . ." *Walker v. Unemployment Comp. Bd. of Rev*., 367 A.2d 366, 370 (Pa. Cmwlth. 1976); *see also Ciarolla*. Here, the WCJ expressly relied upon references to Claimant's right arm hypersensitivity and right hand swelling in Dr. Davis's and Dr. Doshi's 2017 reports to find Claimant's testimony of ongoing subjective pain complaints and inability to work related to his 2019 work injury not credible. *See* Findings of Fact (FOF) 33, 34.d, WCJ Dec. at 29-31. The WCJ also found that Dr. Bromberg failed to explain how Claimant's current subjective CRPS complaints are not simply a continuation of his complaints to Dr. Davis and Dr. Doshi in 2017. *See* FOF 34.c, WCJ Dec. at 31. In addition, the WCJ expressed that Dr. Bromberg's opinions are based upon the truthfulness and veracity of Claimant's subjective complaints and, according to

---

[21] On February 25, 2021, Employer's counsel submitted a list of Employer's objections to Dr. Naftulin's deposition, *see* R.R. at 582a-583a, upon which the WCJ ruled. *See* WCJ Dec. at 29. If Claimant submitted a list of his objections thereto, it does not appear in the record submitted to this Court.

22

his Prior Medical Records, Claimant incorrectly testified that he never previously complained of right arm sensitivity. *See* FOF 34.d, WCJ Dec. at 31.

Based on the record before this Court, the only time the *contents* of Claimant's Prior Medical Records are referenced in the record was during Dr. Naftulin's deposition. However, because Dr. Naftulin reviewed Claimant's Prior Medical Records for the first time six months *after* Claimant's March 2, 2020 IME, and he did not rely on them in preparation of his March 2, 2020 IME report, none of Dr. Naftulin's testimony regarding the Prior Medical Records was competent to corroborate their contents in support of the WCJ's findings of fact.

Turning to Claimant's testimony, after initially asserting that he never experienced right arm, shoulder, or hand sensitivity before his 2019 work injury, on cross-examination, Claimant confirmed that, like his 2019 claim, his 2017 work injury involved his right upper extremity and shoulder, and he had reported experiencing numbness in his right arm extending into his 4th and 5th fingers and right hand swelling and hypersensitivity. Claimant admitted that he treated with Dr. Davis and underwent MRIs and EMGs until the claim was settled in December 2017. He acknowledged that, as of his last evaluation in December 2017, Dr. Davis still prescribed medications for symptoms related to his 2017 work-related injuries. Accordingly, Claimant's admissions corroborated those portions of Dr. Davis's and Dr. Doshi's 2017 medical reports upon which the WCJ relied for FOFs 33, 34.c, and 34.d.

In addition, the WCJ relied upon Claimant's Prior Medical Records to conclude that Claimant failed to meet his burden of proving that his 2019 work injury resulted in brachial plexus injury. Specifically, the WCJ found Dr. Bromberg's opinions regarding Claimant's purported brachial plexus injury not credible, in part, because Dr. Davis's 2017 reports reflected that Claimant was previously diagnosed with brachial plexopathy, and Claimant was purportedly still in active treatment

23

when he settled his 2017 work injury claim. *See* FOF 34.b, WCJ Dec. at 30. Although Claimant's testimony corroborates that he was still medicated for symptoms related to his 2017 work injury when his 2017 WC claim was settled and, thus, the WCJ could properly find he was still in active treatment at that time, Claimant's only testimony regarding prior brachial plexopathy was that at his September 25, 2019 visit, Dr. Becker "talked about a brachial plexus injury or an RSD." R.R. at 53a. Claimant's recollection does not rise to the level of a diagnosis that would corroborate Dr. Davis's reports. No other record evidence corroborated that Claimant was diagnosed with a brachial plexus injury in 2017. Accordingly, the portion of the WCJ's FOF 34.b challenging the credibility of Dr. Bromberg's diagnosis based on the contents of Dr. Davis's 2017 treatment records is based on uncorroborated hearsay.

Finally, the WCJ expressed that Dr. Bromberg's opinions were based upon the truthfulness and veracity of Claimant's subjective complaints, and Claimant had a history of symptom magnification as reflected in Dr. Baker's 2007 and Dr. Dahl's 2017 IME reports. *See* FOF 34.d, WCJ Dec. at 31. Claimant recalled that he underwent an IME by Dr. Dahl in May 2017, but did not testify regarding the details of the IME or admit to magnifying his symptoms. He had no recollection at all of undergoing Dr. Baker's October 2007 IME. Accordingly, Claimant's testimony did not corroborate the symptom magnification reflected in Dr. Baker's 2007 and Dr. Dahl's 2017 IME reports upon which the WCJ relied. Because the portion of FOF 34.d challenging the credibility of Dr. Bromberg's opinions based on Claimant's history of symptom magnification noted in Dr. Baker's 2007 and Dr. Dahl's 2017 IME reports is not corroborated by any competent record evidence, it is based on uncorroborated hearsay. Thus, the WCJ could only rely on Dr. Naftulin's conclusion that Claimant could have been magnifying his symptoms to Dr. Bromberg.

24

Because the aforementioned portions of the WCJ's FOFs 34.b and 34.d "w[ere] not supported by competent evidence[, they] could not be used to support the WCJ's decision." *Benson v. Workmen's Comp. Appeal Bd. (Haverford State Hosp.)*, 668 A.2d 244, 248 (Pa. Cmwlth. 1995). However, "[i]t is well established within our jurisprudence that an unsupported [FOF] which is not necessary to the adjudication merely constitutes harmless error." *Borough of Schuylkill Haven v. Prevailing Wage Appeals Bd.*, 6 A.3d 580, 585 (Pa. Cmwlth. 2010); *see also Monaghan v. Bd. of Sch. Dirs. of Reading Sch. Dist.*, 618 A.2d 1239, 1243 (Pa. Cmwlth. 1992) ("[A]n unsupported finding of fact which is not necessary to the adjudication merely constitutes harmless error.").[22]

Accordingly, "[this] Court must determine whether, excluding the inadmissible hearsay, the factual findings to which that evidence related are nonetheless supported by substantial evidence." *Cruz v. Workers' Comp. Appeal Bd. (Phila. Club)*, 728 A.2d 413, 416 (Pa. Cmwlth. 1999).

> "For purposes of appellate review, it is irrelevant whether there is evidence to support contrary findings; if substantial evidence supports the [fact-finder]'s necessary findings, those findings will not be disturbed on appeal." *Verizon [Pa.] Inc. v. Workers' Comp[.] Appeal [Bd.] (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). When "performing a substantial evidence analysis, this Court must view the evidence in a light most favorable to the party who prevailed before the fact-finder." *WAWA v. Workers' Comp[.] Appeal [Bd.] (Seltzer)*, 951 A.2d 405, 408 (Pa. Cmwlth. 2008). Further, when determining whether substantial evidence exists to support a finding of fact, this Court must give to the party in whose favor the appealed decision was decided "the benefit of all

---

[22] *See also Lashlee v. Workers' Comp. Appeal Bd. (G.M. McCrossin, Inc.)* (Pa. Cmwlth. No. 1725 C.D. 2007, filed Feb. 28, 2008) (applying the *Monaghan* Court's harmless error rule to WC cases). Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

inferences that can logically and reasonably be drawn from the evidence." *B.J.K. v. Dep[*'t*] of Pub[.] Welfare*, 773 A.2d 1271, 1276 (Pa. Cmwlth. 2001).

*Obimak Enter.*, 200 A.3d at 126.

Here, excluding the inadmissible hearsay/uncorroborated portions of FOF 34.b (i.e., that Dr. Bromberg's opinion was not credible "because he failed to adequately account for Claimant's prior diagnosis of brachial plexopathy from the 2017 work injury," and because he "failed to offer a credible explanation regarding when Claimant's brachial plexus symptoms related to the 2017 work injury ended, and/or how they were materially aggravated by the 2019 work injury"), and FOF 34.d (i.e., "Claimant . . . displayed symptom magnification to both Dr. Dahl and Dr. Baker during prior defense medical examinations for different work injuries."), WCJ Dec. at 30-31, this Court holds that "the [WCJ's] factual findings . . . are nonetheless supported by substantial evidence."[23] *Cruz*, 728 A.2d at 416.

---

[23] Claimant argues that the Board should have remanded the WCJ's decision because the WCJ mischaracterized Claimant's burden of proof. In the Claim Petition, Claimant alleged compensable work injuries to his "cervical spine, including but not limited to sprain/strain and C5-6 disruption/herniation; right shoulder injury including aggravation of pre[]existing conditions; right brachial plexus injury, [CRPS,] and all other injuries/diagnosis established by the medical evidence." R.R. at 3a. Claimant separately and distinctly listed right shoulder injury aggravation and right brachial plexus injury as two separate injuries. *See id.* Claimant did not list and, thus, did not have to prove that his 2019 work injury aggravated a prior right brachial plexus injury in order for the WCJ to grant the Claim Petition.

However, before commencing his findings of fact, the WCJ summarized:

> [Claimant] filed a Claim Petition against [Employer] alleging that he sustained a work injury on August 19, 2019[,] to his cervical spine, right shoulder *and aggravation of right brachial plexopathy* and [CRPS] when a heavy container raised by a forklift fell off the forks striking Claimant on the right shoulder, neck[,] and chest region. Employer filed a timely Answer denying the material allegations of Claimant's [Claim] Petition.

WCJ Dec. at 4 (emphasis added). The WCJ summarized in FOFs 6.q and 6.r, that Dr. Naftulin disagreed with Dr. Bromberg's brachial plexus diagnosis because the mechanism of Claimant's 2019 work injury and his resultant physical complaints were inconsistent with a brachial plexus injury. *See* WCJ Dec. at 13-14. Thereafter, in FOF 34.b, the WCJ declared Dr. Naftulin's opinion more credible than Dr. Bromberg's opinion, in relevant part, because "Dr. Bromberg failed to offer a credible explanation regarding when Claimant's brachial plexus symptoms related to the 2017

26

The WCJ considered and compared the expert medical testimony of Dr. Bromberg and Dr. Naftulin at length and found the testimony of Dr. Naftulin to be more credible and persuasive than the testimony of Dr. Bromberg. The WCJ further determined that, to the extent Dr. Bromberg's testimony conflicted with Dr. Naftulin's testimony, Dr. Naftulin's testimony was accepted and Dr. Bromberg's testimony was rejected. The WCJ also accepted Claimant's testimony to the extent that he suffered a shoulder contusion injury at work on August 19, 2019, and he was temporarily unable to work, as it was supported by Dr. Naftulin's testimony. Accordingly, notwithstanding the WCJ's nominal reliance on the Prior Medical Records, the WCJ did not mischaracterize the nature of Claimant's work injuries, and rendered findings of fact and conclusions of law consistent with the evidence.

For all of the above reasons, the Board's order is affirmed.

_____
ANNE E. COVEY, Judge

---

work injury ended, and/or how they were *materially aggravated* by the 2019 work injury." WCJ Dec. at 30 (emphasis added).

Clearly, a portion of FOF 34.b was based on the WCJ's mistaken belief that Claimant pled and had to prove *aggravation of* right brachial plexopathy due to his 2019 work accident, when Claimant's burden was to prove *the existence of* a brachial plexus injury. Dr. Bromberg testified that Claimant sustained right brachial plexopathy in 2019; Dr. Naftulin testified that he did not. The WCJ found Dr. Naftulin's opinion more credible on that issue. In light of this Court's ruling that the record is devoid of documentation that Claimant was diagnosed with a right brachial plexus injury in 2017, Dr. Bromberg would have no basis on which to assess aggravation. Under the circumstances, the WCJ's mistaken belief that Claimant pled and had to prove *aggravation of* right brachial plexopathy was moot.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sean Feldman, : 
                Petitioner : 
                          : 
              v. : 
                          : 
Superior Products Support, LLC : 
(Workers' Compensation Appeal : 
Board), :    No. 1389 C.D. 2021 
                Respondent : 

## O R D E R

AND NOW, this 16th day of February, 2023, the Workers' Compensation Appeal Board's November 19, 2021 order is affirmed.

_____
ANNE E. COVEY, Judge